Travis Jordan (Wyo. Bar No. 7-5721)
Senior Assistant Attorney General
D. David DeWald (Wyo Bar. No. 7-5538)
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
travis.jordan@wyo.gov
david.dewald@wyo.gov

*Attorneys for Petitioner State of Wyoming*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| STATE OF WYOMING,<br><br>Petitioner,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF INTERIOR; DEBRA ANNE HAALAND, in her official capacity as Secretary of Interior; THE BUREAU OF LAND MANAGEMENT; and THE UNITED STATES FOREST SERVICE,<br><br>Respondents. | Civil No.: 1:22-cv-00247-SWS<br><br>**AMENDED PETITION FOR REVIEW OF FINAL AGENCY ACTION** |

The State of Wyoming, pursuant to Fed. R. Civ. P. 15(a)(1)(A), and Local Rule 83.6, hereby files this amended petition for review of the Secretary of Interior's cancellation of the Second Quarter 2021, Third Quarter 2021, and Third Quarter 2022 federal lease sales in Wyoming and the Secretary's adoption of an unwritten policy that stopped quarterly oil and gas leasing.

## INTRODUCTION

The Secretary, through the United States Department of Interior and the Bureau of Land Management (collectively the Secretary), in conjunction with the United States Forest Service, unlawfully canceled quarterly federal oil and gas lease sales in Wyoming. After three decades of identifying federal land for leasing and holding regularly scheduled quarterly lease sales, the Secretary exercised some "newfound" discretion that brought the federal oil and gas leasing program in Wyoming to a sudden halt. The Secretary, however, did not adequately explain her actions and disregarded her statutory obligations.

The Secretary also deviated from longstanding policy and provided no written justification for the pause on federal oil and gas leasing. Instead of engaging in reasoned decision-making, the Secretary simply acted without explaining the basis for her purported discretion.

The Secretary's cancellation of quarterly federal oil and gas lease sales in Wyoming was arbitrary, capricious, an abuse of discretion, and not in accordance with law. Accordingly, this Court should set aside the challenged actions and declare the Secretary's actions violated the Administrative Procedure Act (APA) or Mineral Leasing Act (MLA).

## JURISDICTION AND GROUNDS FOR RELIEF

1.      This Court has jurisdiction under 28 U.S.C. § 1331 because the claims presented in this Petition arise under federal law and 5 U.S.C. §§ 702 and 706 which waive the Secretary's sovereign immunity.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(e) because Petitioner, the State of Wyoming, resides within the District of Wyoming and because all the property concerning this action is situated in the District of Wyoming.

3.      The State of Wyoming challenges the Secretary's decision to cancel the Second Quarter 2021 Wyoming lease sale and her decisions not to hold the Third Quarter 2021 and Third Quarter 2022 Wyoming lease sales. The State of Wyoming also challenges the Secretary's adoption of an unwritten policy that canceled federal oil and gas lease sales in Wyoming. In sum, the Secretary deviated from decades of prior agency practice without justification.

4.      The Secretary's decisions relating to the Second Quarter 2021, Third Quarter 2021, and Third Quarter 2022 federal lease sales in Wyoming are reviewable final agency actions because the Secretary failed to issue timely notices of those sales pursuant to 30 U.S.C. § 226(f) and the sales never occurred. Additionally, the Secretary's unwritten pause on federal oil and gas leasing was the final word in the decision-making process. The Secretary publically proclaimed that the new policy was in place and followed through with that policy by not holding quarterly lease sales. The challenged actions resulted in immediate impacts on Wyoming. The Secretary's actions delayed development on adjoining private and State land and prevented Wyoming from collecting revenue from leasing and royalties.

5.      The State of Wyoming filed this amended petition to protect its interests that are impaired by the Secretary's action. Wyoming manages approximately one-third of the 3.9 million mineral acres of State lands within its borders. *See, e.g.*, Wyo. Stat. Ann. § 36-6-101. Revenue generated through oil and gas leasing on State lands, and subsequent royalties, fund various beneficiaries including public education. The Secretary's cancellation of scheduled federal oil and gas lease sales in Wyoming delayed potential oil and gas development on State lands and denied Wyoming revenue.

6.      The State of Wyoming also manages the oil and gas resources within its borders to prevent waste. *See* Wyo. Stat. Ann. § 30-5-102. The Secretary's failure to hold timely federal oil

and gas sales impaired Wyoming's ability to promote the orderly development of oil and gas resources on designated units of land involving private, State, and federal land.

7.     The State of Wyoming also receives 48 percent of the bonuses, production royalties, and other revenues from oil and gas leasing on federal lands. *See* 30 U.S.C. § 191(a) & (b). Wyoming did not receive revenue from the canceled 2021 or 2022 federal lease sales because federal law requires the United States Treasury to make payments to states "not later than the last business day of the month in which such moneys are warranted[.]" *Id.* at § 191(a). Federal mineral leasing revenues distributed to Wyoming support public schools, highways, local governments, and the state budget reserve account. *See* Wyo. Stat. Ann. § 9-4-601(a). The Secretary's action has deprived Wyoming of the revenue collected from bonus bids, rents, and other revenues associated with quarterly federal oil and gas lease sales including revenue from the canceled Second Quarter 2021, Third Quarter 2021, and Third Quarter 2022 sales in Wyoming.

## PARTIES

8.     Petitioner, the State of Wyoming, is a sovereign state government that regulates land use and oil and gas development within its borders through duly enacted state laws. The State of Wyoming exercises trust responsibilities over its State lands including managing those lands for both short- and long-term returns to the public schools and other designated beneficiaries. Pursuant to federal law, the State of Wyoming also receives a substantial portion of the revenue that the Secretary collects from federal oil and gas leasing on federal lands.

9.     Defendant, United States Department of the Interior, is a federal executive department that oversees the Bureau of Land Management. Department officials assist the Secretary in developing and implementing the Secretary's policies directed at federal mineral

development on federal lands. Department officials are responsible for the decisions challenged in this amended petition.

10.     Defendant, Debra Haaland is the Secretary of Interior. The Secretary, in her official capacity, implements oil and gas development on federal lands pursuant to federal law and is responsible for the decisions challenged in this amended petition.

11.     Defendant, Bureau of Land Management is an agency within the United States Department of Interior and is responsible for managing federal lands and minerals in accordance with federal law. The Bureau implemented the decisions challenged in this amended petition.

12.     Defendant, United States Forest Service, is an agency within the United States Department of Agriculture which is responsible for managing National Forest System Lands (including National Grassland units) within the State of Wyoming. The Forest Service authorizes the Bureau to conduct oil and gas leasing on National Forest System lands. The Forest Service implemented Executive Order 14008 when it directed Regional Foresters to make no new authorizations for oil and gas leasing on National Forest System Lands.

## STATUTORY BACKGROUND

### I.     The Mineral Leasing Act of 1920

13.     The MLA, as amended, authorizes the development of mineral deposits on federal lands. *See* 30 U.S.C. § 181.

14.     The purpose of the MLA is "to promote the orderly development of oil and gas deposits in the publicly owned lands of the United States through private enterprise." *Harvey v. Udall*, 384 F.2d 883, 885 (10th Cir. 1967). The MLA was also enacted "to obtain for the public reasonable financial returns on assets belonging to the public." *Mountain States Legal Found. v. Andrus*, 499 F. Supp. 383, 392 (D. Wyo. 1980).

15.     Under the MLA, the Secretary has the authority to lease all federal lands "which are known or believed to contain oil or gas deposits[.]" 30 U.S.C. § 226(a).

16.     The MLA also states, "[l]ease sales shall be held for each State where eligible lands are available at least quarterly and more frequently if the Secretary of the Interior determines such sales are necessary." 30 U.S.C. § 226(b)(1)(A).

17.     The Secretary promulgated regulations that implement the MLA including the following: "[e]ach proper BLM S[t]ate office shall hold sales at least quarterly if lands are available for competitive leasing." 43 C.F.R. § 3120.1-2(a).

18.     The Secretary enacted a regulation that describes which available lands shall be offered for competitive leasing. *See* 43 C.F.R. § 3120.1-1. For example, lands that are otherwise unavailable for leasing but are subject to drainage shall be offered for competitive leasing. *Id.* at § 3120.1-1(d). The Bureau Manual also states "[l]ands available for competitive leasing that are being drained or are subject to drainage also will be offered by competitive leasing as expeditiously as possible." BLM Manual 3120 at .06.[1]

19.     Congress did not define "eligible" or "available" in the MLA. Accordingly, the Secretary adopted the following definitions in the Bureau's manual:

> "'Eligible' lands comprise all lands 'subject to leasing, i.e, lands not excluded from leasing by a statutory or regulatory prohibition.' 'Available' lands are those 'open to leasing in the applicable [Resource Management Plan], ... when all statutory requirements and reviews have been met.'"

*W. Energy All. v.* Zinke, 877 F.3d 1157, 1162 (10th Cir. 2017) (quoting BLM Manual 3120.11).

20.     The Secretary's competitive leasing policy "encourage[s] the orderly development of Federal onshore oil and gas resources by offering lands for oil and gas leasing by competitive

---

[1] https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual3120.pdf

oral bidding when eligible lands are available." BLM Manual 3120 at .01(.06). Additionally, the Secretary "exercise[s] its discretionary authorities, including its oil and gas leasing authority, through the use of an informed, deliberative process" that includes "[c]ommunication with the public, tribal governments, and Federal, state, and local agencies" and "[c]ompliance with existing laws, regulations, and policies[.]" *Id.* When the Bureau makes oil and gas leasing decisions it "will consult and coordinate with other land and resource managers (Federal and non-Federal), as appropriate." *Id.*

21. The Secretary accepts nominations that express interest for leasing. BLM Manual 3120 at .3(.31). Available lands identified in an expression of interest are also offered for competitive leasing. 43 C.F.R. § 3120.1-1(e).

22. Before the MLA was amended by the Federal Onshore Oil and Gas Leasing Reform Act of 1987 (Reform Act), the Secretary had broad discretion to lease oil and gas resources on federal lands. *See W. Energy All. v. Salazar*, 709 F.3d 1040, 1044 (10th Cir. 2013). The Reform Act, however, changed the federal onshore leasing process and directed the Secretary to largely lease federal lands through a competitive bidding process. *See id.* The Reform Act also limited the Secretary's broad discretion by requiring the Secretary to hold lease sales in each state where eligible lands are available at least quarterly. *See* 30 U.S.C. § 226(b)(1)(A).

## II.    The Administrative Procedure Act

23. The APA requires courts to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Additionally, the APA requires courts to hold unlawful and set aside agency action found to be in excess of statutory jurisdiction, authority, or limitation, or short of statutory right. *Id.* § 706(2)(C).

24.     A reviewing court shall also compel agency action unlawfully withheld. *Id.* § 706(1).

25.     The APA empowers courts to review "agency action, findings, and conclusions" if they are "arbitrary and capricious, an abuse of direction, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This requirement means, among other things, that an agency 'must cogently explain why it has exercised its discretion in a given manner.'" *United States v. Magnesium Corp. of Am.*, 616 F.3d 1129, 1144 (10th Cir. 2010) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983)).

26.     Additionally, "[a]gencies are free to change their existing policies," but they must "provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981–82 (2005)). While an agency need not show that a new rule is "*better*" than the rule it replaced, it still must demonstrate that it "is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (emphasis in original). Further, an agency must "provide a more detailed justification than what would suffice for a new policy created on a blank slate" when "its new policy rests upon factual findings that contradict those which underlay its prior policy," "or when its prior policy has engendered serious reliance interests that must be taken into account." *Id.* (internal citation omitted). Any "[u]nexplained inconsistency" in agency policy is "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice[.]" *Nat'l Cable & Telecomms. Ass'n*, 545 U.S. at 981.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Congress amended the Mineral Leasing Act in 1987.

27.  The Reform Act of 1987 added the following to Section 226(b)(1)(A) of the Mineral Leasing Act:

> Lease sales shall be held for each State where eligible lands are available at least quarterly and more frequently if the Secretary of the Interior determines such sales are necessary.

Pub. L. No. 100-203, § 5102, 101 Stat. 1330, 1330-256.

28.  After Congress passed the Reform Act, the Director of the Bureau of Land Management requested a legal opinion from the Department of Interior's Office of the Solicitor regarding the Secretary's discretion under the recently enacted amendment to Section 226(b).

29.  The Assistant Solicitor for Onshore Minerals responded with several conclusions on December 15, 1989:

> Section [226](b)(1)(A) requires a quarterly lease sale wherever eligible lands are available for leasing. The Committee reports indicate that Congress did not intend to give the Secretary any discretion in this regard. However, nothing in the Reform Act or its legislative history indicates how many parcels must be included in a quarterly sale. As long as interested bidders are not stymied by a limited number of parcels, BLM may exercise its discretion to limit its administrative work where, for example there is no demonstrable interest in leasing. A sale, however, must still be held each quarter. (Exhibit 1 at 8).

> We must caution, however, that the obligation to hold quarterly lease sales carries with it the responsibility to plan the activities necessary to have eligible lands available for sale. (Exhibit 1 at 9).

30.  For over three decades, the Bureau regularly held quarterly federal oil and gas lease sales in Wyoming.

31.     The Bureau prepared for the First Quarter 2021 oil and gas lease sale in Wyoming when it solicited expressions of interest, published a draft environmental analysis on November 13, 2020, and solicited public comment on the planned sale.

32.     The Bureau planned to hold four quarterly federal oil and gas lease sales in Wyoming in 2021.

## II.     Executive Order 14008

33.     President Biden issued Executive Order 14008, *Tackling the Climate Crisis at Home and Abroad*, on January 27, 2021. *See* 86 Fed. Reg. 7619 (Feb. 1, 2021). Executive Order 14008 in relevant part states, "[t]o the extent consistent with applicable law, the Secretary of the Interior shall pause new oil and natural gas leases on public lands or in offshore waters pending completion of a comprehensive review and reconsideration of Federal oil and gas permitting and leasing practices[.]" *Id*. at 7624.

34.     The Deputy Director for Operations, Bureau of Land Management, issued a briefing memorandum on January 28, 2021, that acknowledged Executive Order 14008, Secretarial Order 3395, the existence of the pause, and the Secretary's intent to delay future lease sale notices.

35.     The United States Forest Service issued guidance on February 22, 2021, to its Regional Foresters in response to Executive Order 14008 directing that all Forest Service units shall "[m]ake no new authorization(s) to the BLM concerning specific lands being considered for leasing pursuant to 36 CFR § 228.102(e)." (Exhibit 2 at 1).

36.     As of February 24, 2021, the Bureau scheduled second and third quarter 2021 lease sales in Wyoming. (Exhibit 3 at 1).

**III.    The Secretary canceled the First Quarter 2021 lease sale.**

37.    The Bureau requested the Secretary's authorization to issue a sale notice and hold the First Quarter 2021 Wyoming lease sale on February 4, 2021.

38.    The Acting Deputy Solicitor for the Department issued a memorandum to Laura Daniel-Davis, Senior Advisor to the Secretary, on February 12, 2021, recommending that the Secretary not proceed with the First Quarter 2021 Wyoming lease sale because it "do[es] not satisfy NEPA[.]" (Exhibit 5 at 2). The memorandum also asserted, "[t]he parcels proposed for each of the above sale[s] are not now 'eligible' and 'available' because, at a minimum, BLM has not completed its NEPA analysis." (*Id.*). The Senior Advisor to the Secretary concurred with this recommendation. (*Id.*).

39.    On February 12, 2021, the Secretary posted a notice on its website that the First Quarter 2021 Wyoming lease sale was "postponed to confirm the adequacy of the underlying environmental analysis." (Exhibit 6 at 1).

40.    The Secretary did not hold a First Quarter 2021 oil and gas lease sale in Wyoming.

41.    The State of Wyoming petitioned this Court to review the Secretary's cancellation of quarterly lease sales, including the First Quarter 2021 lease sale, on March 24, 2021. Petition for Review of Final Agency Action, *Wyoming v. Haaland*, Case No. 2:21-cv-00056-SWS (D. Wyo. Mar. 24, 2021) (ECF No. 1). This Court later consolidated Wyoming's petition with an action filed by Western Energy Alliance challenging similar agency action. *See* Order Granting Motion to Consolidate Cases, *Wyoming v. Haaland,* Case No. 2:21-cv-00056-SWS (D. Wyo. May 20, 2021) (ECF No. 55).

42.    This Court determined on September 2, 2022, that Wyoming had "standing to challenge the 2021 first-quarter lease sale postponements[.]" Order Upholding Agency Action on

Judicial Review, *W. Energy All. v. Biden*, Case No. 2:21-cv-00013-SWS (D. Wyo. Sept. 2, 2022) (ECF No. 115 at 16). This Court then concluded that the Secretary's First Quarter 2021 lease sales did not violate the MLA because the involved lands were not "available" for leasing since the required NEPA needed additional review. *Id.* at 19. Specifically, the Court considered the Secretary's obligations under 30 U.S.C. § 226(b) and determined "[i]f eligible lands were available…where lease sales were not held…then the [Secretary] violated the MLA." *Id.* at 18. However, in its ruling, the Court found that the administrative record supported the postponement of the First Quarter 2021 lease sales to ensure the sales complied with NEPA. *See id.* at 17-18.

43.     In sum, this Court found that the Secretary's cancellation of the First Quarter 2021 lease sale in Wyoming was accompanied with a sufficient explanation that was consistent with the MLA and agency policy because the Secretary explained that no land was "available" for leasing at that time.

**IV.     The Secretary acknowledged the existence of the pause.**

44.     Secretary Haaland assumed office on March 16, 2021.

45.     The Secretary publically acknowledged between March 25, 2021, and July 27, 2021, that federal oil and gas leasing was paused.

46.     Secretary Haaland delivered the following remarks on March 25, 2021, to state, local, and tribal stakeholders at a public forum: "[t]he pause in new oil and gas lease sales gives us space to look at the federal fossil fuel programs that haven't been meaningfully examined or modernized in decades."[2]

---

[2] https://www.doi.gov/news/secretary-haaland-delivers-remarks-interiors-public-forum-federal-oil-and-gas-program

47.     Secretary Haaland appeared at the White House Press Briefing on April 23, 2021. A reporter asked Secretary Haaland, "[c]an you give us an update on the moratorium on fracking on federal lands – new contracts?" Secretary Haaland responded: "Thank you so much. So the pause on new leases is still in effect until we finish a review that is due to the President."[3]

48.     On April 27, 2021, Nada Wolff Culver, Deputy Director for the Bureau of Land Management, stated in prepared remarks before the United States Senate Committee on Energy and Natural Resources that "the pause on new leasing is not only prudent, but necessary."[4]

49.     Secretary Haaland appeared before the United States Senate Energy and Natural Resources Committee on July 27, 2021. Senator Hyde-Smith asked Secretary Haaland if "the ban [on lease sales] has been released?" Secretary Haaland responded, "I suppose that the pause that you are referring to that President Biden ordered in his Executive Order is…I suppose it's in effect. I mean you can say that as soon as one lease sale happens, the pause is over. But what I can say is that we are complying with the court order and we are doing the work necessary to move in that direction." Senator Hyde-Smith asked again, "so the pause is not in place at this time?" "Well technically, I suppose you can say the pause is still in place, however, we are complying with the court order to move forward on releasing the report and moving this issue forward."[5]

50.     The Secretary published a press release on August 24, 2021 entitled "Interior Department Files Court Brief Outlining Next Steps in Leasing Program." That release states, "[t]he federal onshore and offshore oil and gas leasing program will continue as required by the district court while the government's appeal is pending."[6]

---

[3] https://www.youtube.com/watch?v=EJFOZknPJPU
[4] https://www.energy.senate.gov/services/files/7D526CBD-0034-437C-914B-3A70A63FA287
[5] https://www.youtube.com/watch?v=rRCGugyf36M
[6] https://www.doi.gov/pressreleases/interior-department-files-court-brief-outlining-next-steps-leasing-program

## V.        Second Quarter 2021

51.     The Bureau planned to hold the Wyoming Second Quarter 2021 federal oil and gas lease sale the week of June 21, 2021. (Exhibit 3 at 1).

52.     The Secretary did not issue a scoping notice of preliminary parcels, did not release a draft environmental assessment, and did not issue a timely lease sale notification for the Second Quarter 2021 oil and gas lease sale in Wyoming in accordance with 43 C.F.R. §3120.4-2. The Secretary also did not issue any statement that acknowledged that the Second Quarter 2021 Wyoming lease sale was deferred.

53.     The Secretary posted an announcement on its website on April 21, 2021, that it was "exercising its discretion to not hold lease sales in the 2nd quarter of Calendar Year 2021."[7] The announcement proclaimed "[t]he Mineral Leasing Act of 1920 provides the Secretary of the Interior discretion regarding whether to lease Federal lands" but did not explain how the law supported or authorized that discretion. (*Id.*). The Secretary also noted she was conducting an ongoing review of the federal oil and gas program.

54.     The Secretary's April 21, 2021, announcement did not adequately explain the rationale for the Secretary's exercise of discretion, did not explain how the decision complied with existing law or policy, and did not consider whether any land in Wyoming was "available" for leasing.

## VI.       Nationwide Injunction Enjoined the Pause

55.     The State of Louisiana also challenged the Secretary's decision to stop all federal oil and gas lease sales. *See* Complaint, *Louisiana v. Biden,* 2:21-cv-0078-TAD-KK (W.D. La. March 24, 2021) (ECF No. 1). On June 15, 2021, Judge Terry Doughty of the United States District

---

[7] https://www.blm.gov/press-release/statement-second-quarter-oil-and-gas-lease-sales

Court for the District of Western Louisiana issued a nationwide injunction enjoining the Secretary from "implementing said Pause, with respect to … all eligible lands onshore." *Louisiana v. Biden,* 543 F. Supp. 3d 388, 419 (W.D. La. 2021).

56.     Judge Doughty's nationwide injunction was in effect until it was vacated and remanded by the Fifth Circuit on August 17, 2022. *Louisiana v. Biden,* 45 F.4th 841 (5th Cir. 2022).

57.     For the purposes of this amended petition, Judge Doughty's nationwide injunction was in place when the Secretary made the decision not to hold the Third Quarter 2021 and Third Quarter 2022 federal lease sale in Wyoming.

**VII.   Third Quarter 2021**

58.     The Bureau had plans to hold the Third Quarter 2021 federal oil and gas lease sale in Wyoming the week of September 20, 2021. (Exhibit 3 at 1).

59.     The Secretary's deadline to issue a lease sale notice for the planned Third Quarter 2021 Wyoming lease sale was August 6, 2021. 30 U.S.C. § 226(f) ("At least 45 days before offering land for lease … the Secretary shall provide notice of the proposed action.").

60.     The Secretary did not attempt to reschedule the Third Quarter 2021 Wyoming lease sale before the end of the quarter on September 30, 2021. If the sale had been rescheduled to September 30, 2021, the Secretary had until August 16, 2021, to post a notice for a rescheduled Third Quarter 2021 Wyoming lease sale.

61.     The Secretary did not issue a scoping notice of preliminary parcels, did not release a draft environmental assessment, and did not issue a timely lease sale notification for the Third Quarter 2021 oil and gas lease sale in Wyoming pursuant to 30 U.S.C. § 226(f). The Secretary also

did not issue any statement concluding that the Third Quarter 2021 Wyoming lease sale was deferred.

62.     The Secretary exercised her purported discretion not to hold lease sales without providing any public explanation or invoking any statutory authority.

63.     The Secretary did not hold a Third Quarter 2021 lease sale in Wyoming.

**VIII.   Federal lands in Wyoming were available for leasing.**

64.      Oil and gas development in Wyoming often takes place on a combination of private, State, and federal lands. Accordingly, the orderly development of oil and gas resources in Wyoming requires cooperation with federal agencies responsible for managing federal mineral resources.

65.     The Wyoming Oil and Gas Conservation Commission is responsible for preventing the waste of oil and gas resources and protecting correlative rights. *See* Wyo. Stat. Ann. § 30-5-109(a). In order to achieve its statutory objectives, the Commission establishes drilling and spacing units (DSUs) that govern responsible oil and gas development across intermingled sections of private, State, and federal land. *Id.*

66.     The Secretary's competitive leasing program typically provides regular opportunities for leasing of unleased federal minerals within DSUs that enables drilling and production activities from adjacent private and State land to conform to the Commission's statutory obligation to prevent waste. For example, Bureau policy states that "[l]ands available for competitive leasing that are being drained or are subject to drainage also will be offered by competitive leasing as expeditiously as possible." BLM Manual 3120 at .06.

67.     In the absence of a federal lease, producers cannot capture oil and gas resources efficiently from units that include unleased federal lands which results in waste.

68.　　In early 2021, the Bureau identified seventeen federal available parcels for leasing in Wyoming that were either critical for drainage purposes or included unleased federal lands in existing producing agreements. (Exhibit 7 at 2). These federal parcels went unleased in a timely manner because the Secretary did not hold a single federal lease sale in Wyoming during 2021.

69.　　The Secretary's failure to consider whether any lands were "available" for leasing during the Second and Third Quarter of 2021 delayed the orderly development of oil and gas on adjoining private and State lands.

70.　　The Secretary also did not provide an explanation for deviating from prior policy of offering unleased federal lands that were subject to potential drainage resulting in additional regulatory uncertainty. For example, development on State land in central Converse County, Wyoming was delayed because a proposed well would have perforated unleased federal minerals. Similarly, despite multiple nominations and no indication of any leasing withdrawal, unleased federal lands (including an area managed by the Forest Service) with proposed development from adjoining lands within an approved DSU went unleased in 2021 within north-central Converse County, Wyoming.

71.　　The Secretary's decision not to consider whether federal land in Wyoming was "available" for leasing in 2021 and her failure to hold regularly scheduled federal quarterly lease sales created a chilling effect on Wyoming's oil and gas lease sales on State lands. For example, the State of Wyoming only received $1.3 million from its own oil and gas lease sales on State lands 2021 while the Secretary's pause was in place. Previous lease sales that Wyoming held for State lands resulted in substantially higher collections including $4.6 million in 2020, $8.8 million in 2019, and $25 million in 2018. The funds that Wyoming receives from leasing its State lands for oil and gas development supports public education and other designated beneficiaries.

72.     Federal lands in Wyoming were available for leasing throughout 2022 including parcels open for leasing under applicable land use plans that were nominated for leasing or subject to potential drainage from adjoining properties.

**IX.     The Secretary has continued to exercise her purported discretion not to hold quarterly lease sales in Wyoming.**

73.     After the Secretary's deadline to issue a timely notice for the Third Quarter 2021 Wyoming lease sale, she announced in a press release on August 24, 2021, that "[t]he federal onshore and offshore oil and gas leasing program will continue as required by the district court[.]"[8] The Secretary's press release also stated that "the Interior Department will continue to exercise the authority and discretion provided under law to conduct leasing in a manner that fulfills Interior's legal responsibilities[.]" *Id.*

74.     The Secretary also continued to assert that she has the discretion to not hold quarterly federal oil and gas lease sales independent of Executive Order 14008. Declaration of Principal Deputy Assistant Secretary for Land and Mineral Management Laura Daniel Davis at ¶ 46, *Louisiana v. Biden*, 2:21-cv-00778-TAD-KK (W.D. La. August 24, 2021) (ECF No. 155-1) ("The Department does not read the [Louisiana] Court's Order to displace the Department's ordinary discretion with respect to onshore lease sales, only to forbid the Department from implementing the Pause from Section 208 of Executive Order 14008 in future leasing decisions.").

75.     On August 27, 2021, the Bureau's Deputy Director for Policy and Programs, Nada Wolff Culver, issued a memorandum to all State Directors stating that the Bureau will continue to render decisions regarding potential lease sales consistent with the decision in *Louisiana v. Biden*, 21-cv-779 (W.D. La. June 15, 2021).

---

[8]  *See supra* note 5.

76.     On August 31, 2021, the Secretary posted a scoping notice for a future federal lease sale in Wyoming.[9] That August 31, 2021, scoping notice was subsequently followed by the Secretary's release of a draft environmental analysis.

77.     On September 13, 2021, the United States Forest Service issued a memorandum to Regional Foresters "Rescinding Interim Direction on Oil and Gas Leasing Pause." (Exhibit 4). The Forest Service's memorandum rescinded the February 22, 2021, memorandum and stated that "Regions may both initiate new and resume suspended actions associated with determining the availability of National Forest System lands for oil and gas leasing (36 CFR 228.102(c)) and providing authorizations to the Bureau of Land Management to lease specific National Forest System lands for oil and gas development (36 CFR 228.102(e))." *Id.*

78.     Nearly eight months after posting a scoping notice for a Wyoming lease sale, the Secretary issued a notice of competitive lease sale activity on April 18, 2022, stating that the Secretary would hold a federal lease sale in Wyoming on June 21, 2022.[10]

79.     After several notices rescheduling the June 2022 lease sale and amendments to the list of parcels offered, the Secretary held a single federal lease sale in Wyoming on June 29-30, 2022.[11] This was the only lease sale that the Secretary held in Wyoming in 2022 and the only sale held since Executive Order 14008 was issued.

80.     On August 17, 2022, the United States Court of Appeals for the Fifth Circuit vacated and remanded Judge Doughty's June 15, 2021, nationwide preliminary injunction. *See Louisiana v. Biden*, 45 F.4th 841 (5th Cir. 2022).

---

[9] https://eplanning.blm.gov/eplanning-ui/project/2015621/570
[10] *Id.*
[11] *Id.*

81.     On August 18, 2022, Judge Doughty of the United States District Court for the District of Western Louisiana issued a merits ruling in the *Louisiana* case which found that the Secretary's cancellation of quarterly lease sales without an explanation violated the APA. *See* Memorandum Ruling, *Louisiana v. Biden,* — F. Supp. 3d. —, 2022 WL 3570933 *15-17 (W.D. La. Aug. 18, 2022). Judge Doughty also issued a permanent injunction, limited to the thirteen states in that case, that enjoined the Secretary from implementing a stop on both onshore and offshore lands. (*Id.* at *20).

## X.     Third Quarter 2022

82.     After holding a single lease sale in June 2022, the Secretary did not resume quarterly leasing in Wyoming. Instead, the Secretary continued to exercise her purported discretion not to hold lease sales without providing any public explanation or invoking any statutory authority.

83.      The Secretary's deadline to issue a lease sale notice for a Third Quarter 2022 Wyoming lease sale was August 16, 2022. 30 U.S.C. § 226(f) ("At least 45 days before offering land for lease … the Secretary shall provide notice of the proposed action.").

84.     The Secretary did not attempt to reschedule the Third Quarter 2022 Wyoming lease sale before the end of the quarter on September 30, 2022.

85.     The nationwide injunction issued by the United States District Court for the Western District of Louisiana on June 15, 2021, was in effect when the Secretary made the decision not to issue a timely lease sale notification for the Third Quarter 2022 lease sale in Wyoming.

86.     The Secretary did not issue a scoping notice of preliminary parcels, did not release a draft environmental assessment, and did not issue a timely lease sale notification for the Third Quarter 2022 oil and gas lease sale in Wyoming pursuant to 30 U.S.C. § 226(f). The Secretary also

did not issue any statement concluding that the Third Quarter 2022 Wyoming lease sale was deferred.

87.    The Secretary did not hold a Third Quarter 2022 lease sale in Wyoming on or before September 30, 2022.

## CAUSES OF ACTION

## COUNT I

**The Secretary did not provide an adequate explanation for canceling the Second Quarter 2021 lease sale in Wyoming.**

88.    Wyoming incorporates by reference the allegations in all preceding paragraphs.

89.    "The APA's requirement that an agency explain its discretion applies when the agency exercises its discretion." *N.M. Health Connections v. Dep't of Health & Human Servs.*, 946 F.3d 1138, 1167 (10th Cir. 2019).

90.    An agency's action is arbitrary and capricious if it "(1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment." *New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683, 704 (10th Cir. 2009) (citation omitted).

91.    The Secretary announced on April 21, 2021, that she was exercising her "discretion to not hold lease sales in the 2nd quarter of Calendar Year 2021" in a press release.[12]

92.    The Secretary's April 21, 2021, press release did not provide an adequate justification to support her exercise of discretion to cancel the Second Quarter 2021 Wyoming

_____

[12] https://www.blm.gov/press-release/statement-second-quarter-oil-and-gas-lease-sales

lease sale. The Secretary's press release cited Executive Order 14008 and noted the Secretary's "ongoing review of the federal oil and gas program" but did not explain how applicable law justified the cancellation. The Secretary simply concluded that the MLA "provides the Secretary of the Interior discretion regarding whether to lease Federal lands and, as a result, whether to identify eligible lands that are available to be included in quarterly lease sales."

93.     The Secretary did not explain how her exercise of discretion was consistent with her statutory obligations, applicable federal regulation, or existing policy.

94.     The Secretary exercised discretion without considering substantial evidence.

95.     The Secretary's exercise of discretion did not consider relevant facts including, but not limited to, the need to protect federal minerals from drainage or engendered reliance interests.

96.     The Secretary did not consider whether any lands were "eligible" or "available" for leasing when exercising her discretion to cancel the Second Quarter 2021 lease sale in Wyoming.

97.     The Secretary's decision to cancel the Second Quarter 2021 federal oil and gas lease sale was a final agency action subject to judicial review.

98.     The Secretary's cancellation of the Second Quarter 2021 lease sale in Wyoming violated the APA. The Secretary's cancellation was arbitrary, capricious, an abuse of discretion, and contrary to law because it did not constitute reasoned decisionmaking. *See Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020).

## COUNT II

**The Secretary did not provide any explanation for canceling the Third Quarter 2021 lease sale in Wyoming.**

99.     Wyoming incorporates by reference the allegations in all preceding paragraphs.

100.    Under the APA, an agency's exercise of discretion within the applicable statutory framework must be reasonable and reasonably explained. *Biden v. Texas*, 142 S. Ct. 2528, 2543 (2022).

101.    The Secretary planned to hold the Wyoming Third Quarter 2021 federal oil and gas lease sale the week of September 20, 2021. (Exhibit 3 at 1).

102.    The Secretary's deadline to issue a lease sale notice for the planned Third Quarter 2021 Wyoming lease sale was August 6, 2021. 30 U.S.C. § 226(f) ("At least 45 days before offering land for lease … the Secretary shall provide notice of the proposed action.").

103.    The Secretary did not post a timely lease sale notification for the planned Third Quarter 2021 federal oil and gas lease sale in Wyoming.

104.    Despite the June 15, 2021, nationwide injunction issued by the United States District Court for the Western District of Louisiana that enjoined the Secretary from implementing the pause on eligible onshore lands, the Secretary did not prepare any environmental analysis, solicit public comment, or post a timely lease sale notification for the Third Quarter 2021 federal oil and gas lease sale in Wyoming.

105.    As of August 24, 2021, the Secretary also continued to assert that she has the discretion to not hold quarterly federal oil and gas lease sales independent of Executive Order 14008. *See* Declaration of Principal Deputy Assistant Secretary for Land and Mineral Management Laura Daniel Davis at ¶ 46, *Louisiana v. Biden*, 2:21-cv-00778-TAD-KK (W.D. La. August 24, 2021) (ECF No. 155-1).

106.    The Secretary did not provide any explanation for the exercise of discretion to not hold the Third Quarter 2021 federal oil and gas lease sale in Wyoming.

107.    The Secretary did not invoke any statutory authority for the discretion she exercised in canceling the Third Quarter 2021 oil and gas lease sale in Wyoming.

108.    The Secretary's exercise of discretion did not consider relevant facts including, but not limited to, the need to protect federal minerals from drainage or engendered reliance interests.

109.    The Secretary's decision to not hold a Third Quarter 2021 federal oil and gas lease sale was a final agency action subject to judicial review.

110.    The Secretary's failure to provide any reasoning for her discretion to not hold the Third Quarter 2021 lease sale in Wyoming violated the APA. The Secretary's decision was arbitrary, capricious, an abuse of discretion, and contrary to law because it did not explain how it was consistent with her statutory obligations, applicable federal regulation, or existing policy.

111.    The Secretary's failure to notice and hold the Third Quarter 2021 federal oil and gas lease sale in Wyoming was also agency action unlawfully withheld. *See* 5 U.S.C. § 706(1).

## COUNT III

**The Secretary did not provide any explanation for canceling the Third Quarter 2022 lease sale in Wyoming.**

112.    Wyoming incorporates by reference the allegations in all preceding paragraphs.

113.    The Secretary's deadline to issue a lease sale notice for the Third Quarter 2022 Wyoming lease sale was August 16, 2022. 30 U.S.C. § 226(f) ("At least 45 days before offering land for lease ... the Secretary shall provide notice of the proposed action.").

114.    The Secretary did not post a timely lease sale notification for the Third Quarter 2022 federal oil and gas lease sale in Wyoming.

115.    The nationwide injunction issued by the United States District Court for the Western District of Louisiana on June 15, 2021, was in effect when the Secretary made the decision not to issue a timely lease sale notification for the Third Quarter 2022 lease sale in Wyoming.

24

116.    The Secretary did not issue a scoping notice or prepare the necessary environmental analysis for the Third Quarter 2022 federal oil and gas lease sale in Wyoming.

117.    The Secretary did not provide any explanation for the exercise of discretion to not hold the Third Quarter 2022 federal oil and gas lease sale in Wyoming.

118.    The Secretary did not invoke any statutory authority for the discretion she exercised in canceling the Third Quarter 2022 oil and gas lease sale in Wyoming.

119.    The Secretary's exercise of discretion did not consider relevant facts including, but not limited to, the need to protect federal minerals from drainage or engendered reliance interests.

120.    The Secretary's decision not to hold the Third Quarter 2022 federal oil and gas lease sale was a final agency action subject to judicial review.

121.    The Secretary's failure to provide any reasoning for her discretion to not hold the Third Quarter 2022 lease sale in Wyoming violated the APA. The Secretary's decision was arbitrary, capricious, an abuse of discretion, and contrary to law because it did not explain how it was consistent with her statutory obligations, applicable federal regulation, or existing policy.

122.    The Secretary's failure to notice and hold the Third Quarter 2022 federal oil and gas lease sale in Wyoming was also agency action unlawfully withheld. *See* 5 U.S.C. § 706(1).

**COUNT IV**

**The Secretary adopted a new leasing policy without providing an explanation.**

123.    Wyoming incorporates by reference the allegations in all preceding paragraphs.

124.    Unwritten agency actions are subject to judicial review under the APA. *See R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015); *see also Grand Canyon Tr. v. Pub. Serv. Co. of N.M.*, 283 F. Supp. 2d 1249, 1252 (D.N.M. 2003) (holding that "[b]oth law and logic" dictate that an unwritten agency policy is reviewable).

125.     Agencies "are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC*, 136 S. Ct. at 2125. When an agency changes course, it must "be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Id.* at 2120 (citing *Fox Television*, 556 U.S. at 515). An agency must "display awareness that it is changing position" and "show that there are good reasons for the new policy." *Id.* at 515 (alteration omitted). Likewise, if the new policy "rests upon factual findings that contradict those" upon which the prior policy was based, the agency must provide a reasoned explanation "for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Id.* at 515-516. When an agency ignores such matters, it acts arbitrarily and capriciously. *Id*.

126.     When an agency has not stated any reasons to support a decision, its decision is arbitrary and capricious for failure to "articulate a satisfactory explanation…." *Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 50.

127.     The Secretary publically acknowledged that the pause was in effect on several occasions between March 25, 2021, and July 27, 2021.

128.     The Secretary's pause on lease sales in Wyoming was a final agency action because it marked the consummation of the Secretary's decision-making and carried legal consequences. The Secretary did not issue a timely notice for the Second Quarter 2021, Third Quarter 2021, or Third Quarter 2022 Wyoming lease sale and those sales did not occur. As a result, oil and gas development on adjoining private and State lands did not move forward and Wyoming did not receive its portion of federal mineral revenue from quarterly federal lease sales that would have occurred in 2021 and 2022.

129.    The Secretary did not memorialize the policy that paused quarterly leasing in any written form. The Secretary did not issue a secretarial order, publish a federal register notice, or issue an instruction memorandum regarding the new policy. Furthermore, the Secretary did not provide a public explanation for which statutory authorities authorized the new policy.

130.    The Secretary's pause, however, was a meaningful shift from a longstanding agency policy as evidenced by the following:

   a.    The Reform Act required the Secretary to hold quarterly lease sales in States where land is eligible and available for leasing.

   b.    The Secretary's Solicitor on December 15, 1989, confirmed that under the Reform Act "the obligation to hold quarterly lease sales carries with it the responsibility to plan the activities necessary to have eligible lands available for sale." (Exhibit 1 at 9).

   c.    The Bureau adopted a definition of 'eligible' and 'available' that identifies which lands are subject to quarterly competitive leasing. BLM Manual 3120 at .1(.11.)

   d.    Federal regulation and Bureau policy reflect the quarterly lease sale requirement in statute. *See, e.g.*, 43 C.F.R. § 3120.1-2(a); BLM Manual 3120 at .06; 3120 at .1(.12(A)).

   e.    Following the enactment of the Reform Act in 1987, the Secretary consistently prepared for quarterly lease sales in Wyoming by identifying 'eligible' and 'available' lands and preparing the necessary environmental analysis.

f.    After President Biden issued Executive Order 14008, the Secretary stopped posting timely notices for quarterly lease sales in Wyoming.

g.    The Forest Service, recognizing its "statutory authorities and relationship with BLM in federal oil and gas leasing actions" found a pause was warranted in response to Executive Order 14008. (Exhibit 2).

h.    The Secretary announced in a press release that she has newfound discretion to not hold the Second Quarter 2021 lease sale and did not explain how that decision was consistent with prior longstanding statutory interpretations or Department practices.

i.    The Secretary provided no explanation for not holding the Third Quarter 2021 or Third Quarter 2022 lease sale in Wyoming.

j.    The Secretary has not explained how federal law provides her with the newfound discretion to not hold quarterly leases sales in Wyoming.

k.    The Secretary has failed to resume regular quarterly lease sales in Wyoming.

131.    The Secretary adopted and implemented an unwritten policy that stopped quarterly federal oil and gas lease sales in Wyoming. The Secretary's action conflicts with prior interpretations of law, applicable regulations, and the Bureau Manual.

132.    The Secretary adopted a new leasing policy without substantial factual evidence.

133.    Moreover, the Secretary did not provide adequate reasoning for the new unwritten policy and did not consider whether lands were available for leasing in Wyoming.

134.    The Secretary implemented the pause through deliberate inaction. The Secretary did not prepare the necessary environmental analysis, solicit public comment, or post timely lease sale notifications for federal oil and gas lease sales in Wyoming.

135.    The Secretary's failure to hold scheduled quarterly federal lease sales denied the State of Wyoming its portion of revenue from federal leasing and impaired the orderly development of oil and gas resources on State and private land within unitized areas with unleased federal minerals.

136.    The pause was an unexplained departure from decades of prior practice. *See, e.g., Fox Television*, 556 U.S. at 515 ("An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books.") (citation omitted). Accordingly, the Secretary's unwritten policy that stopped quarterly oil and gas lease sales in Wyoming violated the APA because it was arbitrary and capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

Petitioner, the State of Wyoming respectfully requests that this Court:

A.    Set aside and declare that the Secretary's decision to cancel the Second Quarter 2021 federal oil and gas lease sale in Wyoming violated the APA and MLA;

B.    Declare that the Secretary's decision to not hold the Third Quarter 2021 federal oil and gas lease sale in Wyoming was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

C.    Declare that the Secretary's decision to not hold the Third Quarter 2022 federal oil and gas lease sale in Wyoming was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

D.      Declare that the Secretary's adoption of an unwritten policy pausing quarterly federal oil and gas lease sales was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

E.      Enter other preliminary or permanent injunctive relief as the State of Wyoming may hereafter specifically seek; and

F.      Grant the State of Wyoming such additional relief as the Court deems just and proper to remedy the Secretary's violations of law and to protect the State of Wyoming's interests.

Submitted this 1st day of December, 2022.

FOR THE STATE OF WYOMING

*/s/ Travis Jordan*
Travis Jordan (Wyo. Bar No. 7-5721)
Senior Assistant Attorney General
D. David DeWald (Wyo Bar. No. 7-5538)
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
travis.jordan@wyo.gov
david.dewald@wyo.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of December, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the U.S. District Court for the District of Wyoming and served upon the following via United States mail, first class, certified, return receipt requested:

U.S. Department of the Interior
1849 C Street NW
Washington, DC 20240

Bureau of Land Management
1849 C Street NW
Washington, DC 20240

Honorable Debra Haaland, Secretary
U.S Department of the Interior
1849 C Street NW
Washington, DC 20240

U.S. Attorney's Office
Attn: Civil Process Clerk
P.O. Box 668
Cheyenne, WY 82001-0068

Honorable Merrick B. Garland
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

U.S. Forest Service
1400 Independence Ave., SW
Washington, DC 20250-0003

/s/ *Travis Jordan*
Senior Assistant Attorney General